Good morning, Your Honors. Todd Burns on behalf of Mr. Karimi. My hope is to save two minutes for rebuttal. In 2014, the lead defendants in this case, Robert Walters and Eric Henry, entered into a criminal scheme whereby they would receive bulk shipments of steroids from Israel. They would repackage and label those for retail distribution, and then they would send them to customers in the United States that had been identified by their Israeli partner. Mr. Karimi was not then nor ever part of that scheme. Instead, he was recruited in 2015 by Mr. Walters for a specific purpose, and that was to distribute steroids to people in the local bodybuilding community or gyms because Mr. Karimi was a bodybuilder. That was his agreement. That was Mr. Karimi's agreement with Mr. Walters. At the sentencing proceeding, the pre-sentence report recommended a base offense level of 16. There was no reasoning given for that, no factual basis, no theory to support that. Mr. Karimi objected, and he said that, number one, it appeared that the 16 might be based on conduct that Mr. Walters and Mr. Henry engaged in, the mailing these steroids. He did object. Did he ever object specifically to the total amount of drugs involved in this conspiracy? And if so, where in the sentencing transcript did he raise that objection? As I understand the argument from reviewing the record, the objection was to the scope of his involvement. And because his involvement was limited, therefore, he should be responsible only for the amount of drugs found on the particular date instead of the total amount of drugs that could be attributed to the entire conspiracy. So there's a distinction there because under Rule 32, the court just has to rule on the objection that was before the court. So was there a specific objection to the total quantity that could be attributable to the conspiracy? Well, there was an objection that specifically argued the quantity that was attributable to Mr. Karimi. Right. But in the context of his limited role in the conspiracy, as I understand it. Well, I think both things are done. This is on pages 120 to 123 of the excerpt. And at about 120, the objection discusses that, look, 16 may be the amount that's attributable to Walters and Henry, although it looks like that's including conduct that Mr. Karimi was not involved with. And then at 122, it says that the only reliable evidence with respect to Mr. Karimi's conduct is the evidence that was seized in his home when the search warrant was executed. So I don't know how you could view that as anything other than a sufficiency argument, that there's not sufficient evidence to say that he's liable for 16, there's only sufficient evidence to say that he's liable for 10. In response, neither the probation officer nor the government said, well, look, there's evidence that he's reliable for 16 based on X, Y, or Z. There was no evidence pointed to, there was no theory offered as to that. The district court nonetheless said, I'm going to apply the 16. But again, there's nothing in the record to support a 16. But even if he only had objected to the 16 and saying, okay, I accept that as the amount for the whole conspiracy, what he was saying is that under 1B1.3, relevant conduct, I'm only liable for what I agreed to do. And what I agreed to do was to distribute steroids at a gym, not all this mailing stuff. There's no dispute, and the record is clear that he's not involved with the mailing stuff. So the district court just said plus 16. It doesn't give any factual basis. Well, under Rule 32, the district court is obligated to point. The court says the main issue, the court framed the issue. Once the challenge was raised that my involvement in the conspiracy was limited, and so therefore I shouldn't be responsible for the entire amount that's attributed to the conspiracy, the court frames the issue exactly the way the defense objected, which is the main issue here, how much of the conspiracy should he be assessed? That goes to the base offense level. You're advocating a level of 10. And then the district court goes through the arguments and made findings that he was involved in the manufacture. Now, you can challenge whether those findings are correct, but I think it's difficult to say that the court didn't rule on the objection. Well, and I agree, and I pointed out the district court did say that at the beginning of the sentencing hearing that the main issue is what's attributable to Mr. Karimi here. And then when it came time to assess that issue and how that played out in the guidelines context, and this is at ER 147, the district court said, a conspirator, as you know, doesn't have to know all of the nature of the conspiracy or all of the precise issues involved in order to be liable for conspiracy. I'll get to that when we get to the base offense level. Then two pages later, when the judge gets to the base offense level, she just says plus 16 applies. She doesn't give any reason for it. And what that quote that I just indicated on 147 shows is that the judge believed if the person is liable for this larger conspiracy because they play a bit part in the conspiracy, they're liable for all the drugs in the conspiracy. And 1B1.3 makes clear that's not the case. There can be different base offense levels for conspirators involved in the same conspiracy, based on the scope of what they actually agreed to do. And Mr. Karimi didn't agree to this whole broad conspiracy of mailing stuff all over the U.S. He agreed to distribute stuff at the local gym to his bodybuilding friends. Although wasn't there testimony at the trial by Mr. Walters that Karimi accompanied Walters to the post office on several occasions when Walters was mailing steroids to his customers? I don't believe there was. I believe the testimony was at Henry accompanied Walters. I'll double check that. Well, I could be mistaken about that. He did say he accompanied him to the post office. But throughout his testimony, he repeatedly makes clear that Mr. Karimi is not involved in the mailing scheme. And I point to the court to excerpt of record 30, 38, 62 to 63. I saw that. But I also saw that Walters said that Karimi accompanied him to the post office when Walters was mailing the steroids. Well, and I don't know what he meant by accompany if he went along in the car when Walters mailed the steroids. But the bulk of the evidence is that Mr. Karimi was not involved in that part of the conspiracy. And as a matter of fact, at ER 24, Mr. Walters describes Mr. Karimi's conduct quite clearly as being part of, as local distribution to his bodybuilding friends. So the district court, I believe if it had carried out its obligations under Rule 32 of pointing to evidence that supported the finding of a level 16, it probably would have made clear to the court in going through that requirement that there really was no evidence. There's nothing in the record that supports a level 16. And also, as I indicated, the 1B1.3 requirement that the court looked at specifically is agreement. It seems clear that the district court only seems to believe if something was part of the larger conspiracy and Mr. Karimi played a bit part in that conspiracy, he's liable for it. And that's error under 1B1.3 as well. So if there are no further questions, I'll reserve the rest of my time. Good morning, Your Honors, and may it please the Court. Helen Hong on behalf of the United States. As Your Honors have already acknowledged, the nature of the objection below really answers the question of whether the district court simply adhered to its obligations under Rule 32. And the answer is the district court did. It ticked through the eight factual objections that Mr. Karimi raised, as well as the guidelines calculation for the base offense level, made a determination, and identified what the base offense level should be. Under this Court's laws, as well as Rule 32, the Court fulfilled all of its obligations. The nature of the objection below, as Your Honor noted, Judge Nguyen, was that the defendant was an end user and that he simply obtained steroids from Mr. Walters and Henry. That is a contention that the district court flatly rejected on multiple occasions. The Court rejected it in its memorandum decision when it found, beyond a reasonable doubt, that the defendant was guilty. And it did it again during the sentencing hearing when the Court said, I reject the fact that the defendant was not involved in the manufacturing of steroids, in labeling and repackaging them for distribution. Does the record show when Mr. Karimi joined this conspiracy and the quantity of drugs distributed by the entire conspiracy after that date? Your Honor, yes. The record does reflect that beginning in June 2015, that GPS data placed Mr. Walters and Henry at the Scott Street address that Mr. Karimi rented at a minimum beginning in June of 2015. And does the record show the quantity of drugs distributed by the total conspiracy beginning on that date going forward? And Your Honor's question really shows why the Court's guidelines calculation likely grossly underestimated Mr. Karimi's full scope of responsibility here. We have at SCR 65 a statement from Mr. Walters that he distributed approximately 500 vials of steroids per week. So the entire scope of the conspiracy that Mr. Walters testified that he was involved in was far greater than what was attributed to him, both in the plea agreement as well as in Mr. Karimi's pre-sentence report. Instead, what Mr. Karimi was attributed was the mailings that were directly made from Mr. Scott or the Scott Street address, excuse me, between June of 2015 and September of 2015. The universe of steroids that were attributed to him, therefore, didn't include anything before Mr. Karimi's participation in the conspiracy. Really what we have here is the district court concluding that under 1B1.3A1A, as opposed to relevant conduct, that the defendant was directly involved in the distribution or manufacture of at least 20,000 to 40,000 units of steroids. We don't have to get into whether those units were reasonably foreseeable to him, whether it was within the scope of the conspiracy or in furtherance of the jointly undertaken activity. Because the evidence tied that amount to the address? Tied that amount specifically to Mr. Karimi. Mr. Karimi in his reply brief suggests that the 147 packages mailed between June and September are actually packages that were mailed from Oceanside, because there's reference in the complaint at ER 8 and 9 that there were 134 packages mailed from Oceanside as well as an additional eight packages from the Scott Street address in Point Loma. But they are separate calculations. There was an extrapolation conducted based on GPS data that showed that there is a reference to this in the complaint as well that GPS data placed Mr. Walters and Mr. Henry's vehicles at the Scott Street address and that it frequently stopped thereafter at the Cannon Street post office. The extrapolation of that data is what led to the 20,000 to 40,000 figure, which again grossly underestimates Mr. Karimi's responsibilities because he wasn't responsible only for those mailings. He was also responsible for what he distributed. And in the record, we laid this out in our answering brief, but in the record there's plenty of evidence to show that Mr. Karimi was involved in at least $2,000 worth of steroid sales per week for a 15-week period. Mr. Walters testified that he went to Mr. Karimi's home two to three times per week, that he would drop off 50 vials of steroids on each occasion, and that those vials contained 10 milliliters of steroids. Doing the calculations, that is well over the 20,000 unit threshold required for the local distribution scheme alone. That doesn't include the mailings, which were essential to the scheme. And that's because of the nature of the conspiracy. Both Walters and Henry testified that they received no profit from precursors that were delivered to them, that it was essential as part of the scheme that they mailed portions of those steroids out. They got extras in order to distribute, and that's how the scheme worked. Without the mailings, the local distribution couldn't occur. And for that reason, the Court didn't err procedurally or otherwise in concluding that the base offense level here should have been 16. Unless the Court has any other questions, we'd urge this Court to affirm the sentence. Thank you, Your Honors. Thank you, Kat. Thank you. Government counsels jumped around with a lot of different theories as to how the District Court could have gotten the base offense level 16 from Mr. Karimi. I've addressed those in my reply brief. I couldn't possibly address them all right now. But I'll just say in short, you will look in vain to find the District Court making any such findings based on 500 vials, $2,000 in sales a week, et cetera. As a matter of fact, $2,000 in sales a week, the District Court made a finding that there was $1,000 in sales a week, and that's an excerpt of Record 107. The District Court simply made no finding, factual finding to support a base offense level of 16. And as a matter of fact, Mr. Walters and Mr. Henry entered into plea agreements based on the entire conspiracy conduct, including their mailings, of base offense level 16. It's obvious Mr. Karimi was a bit player who had a very focused role, so why would he be at the same base offense level unless he's encompassed in his base offense levels all their conduct that he's not responsible for? And the final point that I would make is that the GPS data showing Mr. Walters going to Mr. Karimi's home is two visits. That's June 15, 2015 and August 31, 2015. That's an excerpt of Record 12 to 13. There aren't multiple visits indicated to his home in the GPS data. In Mr. Walters' post-arrest statements, he said, I went to Mr. Karimi's home a few times, and that is at excerpt of Record PSR, the pre-sentence report, paragraph 22. At trials, Mr. Walters said, I went to Mr. Karimi's home six to ten times. That's an excerpt of Record 88 to 90. As I indicated, the tracking data shows two visits. So there are infrequent visits. All these trips that add up to 147 packages, those were, by the way, the packages that were delivered to a post office in Oceanside that were put together in Oceanside, far away from Mr. Karimi's house. All that stuff is not related to Mr. Karimi's involvement. If the Court doesn't have any questions. Thank you, Counsel. The case is arguably submitted.
judges: Reinhardt, Nguyen, Simon